IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN MARCOUX | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| AETNA LIFE INSURANCE COMPANY | § | |

## PLAINTIFF'S COMPLAINT

KAREN MARCOUX files this Complaint asserting causes of action in law and equity for relief against Aetna Life Insurance Company. It is a claim for health insurance coverage for transcranial magnetic stimulation ("TMS") treatment, which Aetna has already admitted in a class action settlement[1] that it should have provided to its insureds.

### I.
### PARTIES

1. Plaintiff Karen Marcoux is a resident citizen of Katy, Fort Bend County, Texas.

2. Defendant, Aetna Life Insurance Company ("Aetna"), is a domestic or foreign insurance company licensed to do business and doing business in Texas, and can be served with process by serving its registered agent, CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, or wherever it may be found.

### II.
### JURISDICTION AND VENUE

3. This action against Aetna arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

---

[1] Exhibit 1 is a copy of the Complaint in *Christopher Meidl v. Aetna Life Ins. Co.*, C.A. 3:15-cv-01319-JCH (Dist. Conn., September 3, 2015).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and are in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

### III.
### STATEMENT OF FACTS

6. Ms. Marcoux was at all relevant times a covered beneficiary under an employee welfare benefit plan created and administered by BP Corporation North America Inc. ("BP"). BP was the plan sponsor of the BP Corporation North America Inc. Retiree Medical Plan ("Plan"). Michael, Ms. Marcoux's husband, worked for BP and was a covered participant under the Plan. As a beneficiary, Ms. Marcoux was entitled to health care benefits under the Plan. Aetna was the insurer for the Plan.

7. Ms. Marcoux first began to suffer from depression in November 2007. She was eventually diagnosed with major depressive disorder.

8. She received therapeutic transcranial magnetic stimulation ("TMS") treatment with Dr. Kimberly Cress at the TMS Serenity Center in November and December 2013. Dr. Cress used the NeuroStar TMS Therapy System in this treatment.

9. TMS is a non-invasive procedure that uses an electromagnet to generate pulsed magnetic fields in the area of the brain associated with mood control. In doing so,

it greatly alleviates depression symptoms. TMS only induces electrical signals within the brain. It does not cause seizures or other related side effects.

10. TMS is a safe, effective, and generally accepted standard of medical practice to treat depression within the mental health community. It has been around for the last 20 years. The Food and Drug Administration ("FDA") approved TMS for major depressive disorder in October 2008. The American Psychiatric Association and other nationally recognized associations have validated its safety and effectiveness. Medical providers such as Harvard Medical System, Johns Hopkins University, Boston Medical Center, Cornell University, Brown University, and the University of Texas at Houston recommend and use TMS on a regular basis. Insurance companies like Medicare, UnitedHealthcare, Anthem, Health Care Service Corporation, and at least 25 Blue Cross Blue Shields cover TMS and a safe, effective treatment for TMS and do not consider it "experimental".

11. Ms. Marcoux filed a claim for health care coverage with Aetna. Aetna denied the claim on December 12, 2013 because it concluded that TMS was not medically necessary and was "experimental and investigational". In denying the claim, Aetna relied on its internal policy that categorically denied all TMS treatment as "experimental and investigational".

12. Dr. Cress submitted a Level 1 appeal on behalf of Ms. Marcoux on January 21, 2014. In the appeal, Dr. Cress provided evidence that Aetna's decision ignored recent medical research, published medical guidelines, and current psychiatric practice. She also noted that TMS treatment was approved by the FDA, was safe, efficient,

and as beneficial as established alternative treatments. She also provided evidence that TMS treatment was medically necessary for Ms. Marcoux.

13. Aetna denied the Level 1 appeal on March 14, 2014. In doing so, it again concluded that TMS was not medically necessary and was "experimental and investigational". Aetna did not discuss or even acknowledge the information provided by Dr. Cress showing the safety and efficacy of TMS treatment.

14. Dr. Cress submitted a Level 2 appeal on behalf of Ms. Marcoux on March 20, 2014. In the appeal, Dr. Cress provided more evidence that TMS treatment was approved by the FDA, was safe, efficient, provided a net health outcome, and as beneficial as established alternative treatments. She also provided evidence that TMS treatment was medically necessary for Ms. Marcoux.

15. Aetna denied the appeal on April 24, 2014. In doing so, it again concluded that TMS was not medically necessary and was "experimental and investigational".

16. With the denial of the Level 2 appeal, Ms. Marcoux complied with the Plan's administrative requirements provided in the Explanation of Benefits.

17. On September 3, 2015, Christopher Meidl filed a class action lawsuit against Aetna in the District of Connecticut. *Exhibit 1.* Ms. Marcoux was provided notice of a class action settlement on April 29, 2019. She opted out of that class settlement before the June 26, 2019 deadline.

18. Having exhausted her administrative remedies, Ms. Marcoux brings this action to recover the health insurance benefits promised in the Plan and Policy.

**IV.**
**CLAIMS & CAUSES OF ACTION**

19. The BP Corporation North America Inc. Retiree Medical Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* BP is the plan sponsor and Plan Administrator. Aetna is the insurer and Claims Administrator for the Plan.

20. As a Plan fiduciary, Aetna is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

21. Aetna's adjustment of Plaintiff's claim was instead biased and outcome oriented. This was partly reflected by its denial of Plaintiff's claim, even after being presented with evidence that her claim was covered, medically necessary, and not experimental or investigational. It was reflected in Aetna's unreasonable reliance on an internal policy that categorically denied coverage for TMS treatment. It was also reflected in Aetna's repeated use of incorrect and inappropriate guidelines for Plaintiff's medical condition or pursuant to Plan requirements.

22. Aetna violated its fiduciary duties to Plaintiff by implementing a policy specifically designed to deny coverage for TMS based on the experimental and investigational exclusions under the Plan and Policy, even though such a conclusion was contrary to generally accepted medical practices and Plan terms. In doing so, it did not act "solely in the interests of participants and beneficiaries" for the "exclusive purpose" of "providing benefits". It did not use the care, skill, prudence, and diligence required of a fiduciary.

23. Aetna's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

24. Aetna's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which Aetna based its denial decision was ambiguous. The ambiguous nature of those terms requires those terms be construed against Aetna and in favor of Plaintiff.

25. Aetna's denial was made without substantial supporting evidence. Its decision to deny Plaintiff's claim was instead based upon rank speculation and guesswork. Aetna's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

26. At all material times, Aetna acted on behalf of the Plan and in its own capacity as the Insurer and as Claims Administrator.

27. Aetna's termination of Plaintiff's claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Plaintiff to the health insurance policy benefits to which she is entitled. Plaintiff incurred at least $11,550 in medical bills for treatment of TMS, along with pre-judgment interest on the amounts due and unpaid, all for which she now sues.

## V.
## STANDARD OF REVIEW

28. The default standard of review for denial of a benefit claim is *de novo.* Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

29. The Plan or Policy may contain a discretionary clause or language Aetna may contend affords it discretion to determine eligibility for benefits, to interpret the

Policy, and determine the facts. Aetna's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

30. If discretion applies, the Court should afford Aetna less deference in light of its financial conflict of interest. Aetna's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Plaintiff's claim and as the potential payor of that claim.

31. Aetna's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Aetna's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims. By adhering to an outdated policy regarding TMS, Aetna artificially decreased the number and value of TMS claims, which financially benefitted itself at the expense of insureds like Ms. Marcoux.

32. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other Aetna policyholders and claimants.

33. In light of its financial conflict, Aetna should be given little or no discretion in its claims decision.

34. Alternatively, the standard of review of this claim should be *de novo,* affording Aetna no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

35. The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas

has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Plaintiff's claim and Aetna's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

36. Plaintiff requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

37. The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Tex. Ins. Code §1103.104(c). Plaintiff thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code §1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

38. Plaintiff seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Karen Marcoux, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Aetna Life Insurance Company, and issue judgment against Aetna Life Insurance Company as follows:

A. That Aetna pay to Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B. That Aetna pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C. All such other relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

By: /s/ Amar Raval
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF